UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JASON GOLUB,

                         Plaintiff,

              -against-

TIM COLL and PAUL VEITCH,
*in their individual capacities*, CITY OF
SARATOGA SPRINGS; SARATOGA
SPRINGS POLICE DEPARTMENT,

                        Defendants.

1:26-cv-1490 (ECC/DJS)

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

Plaintiff, Jason Golub, by and through his attorneys, Capezza Hill, LLP, hereby alleges as his Complaint the following:

**PRELIMINARY STATEMENT**

1.     This is a case about the unlawful abuse and misuse of government power. Plaintiff Jason Golub is a lawyer and public servant who was wrongly and falsely accused of a crime he did not commit and made to bear the financial and personal costs of defending himself and his reputation against a baseless investigation and prosecution spearheaded by Defendant Tim Coll ("Coll") and effectuated by Defendant Paul Veitch and the Saratoga Springs Police Department. As set forth herein, Coll leveraged his elected political position as a City of Saratoga Springs Commissioner of Public Safety and his status as a former FBI agent to instigate a criminal prosecution against Plaintiff, a political adversary and African-American, who voiced concerns about implicit bias and racial profiling that infuriated Mr. Coll, who then set off on a campaign of retaliation and retribution against Plaintiff that culminated in a flawed and baseless criminal prosecution that was ultimately dismissed.

1

## PARTIES

2.      Plaintiff Jason Golub is an African-American individual residing in the City of Saratoga Springs, County of Saratoga, State of New York.

3.      For the period beginning in 2024, Defendant Tim Coll ("Coll") was the duly elected Public Safety Commissioner for the City of Saratoga Springs, and is a resident of the County of Saratoga, State of New York.  Defendant Coll is a former FBI agent and is a white man.

4.      Defendant Lieutenant Paul Veitch ("Lt. Veitch") is a resident of the County of Saratoga, State of New York, and at all times relevant herein was employed as a detective by the Saratoga Springs Police Department, acting in his individual capacity.

5.      At all times relevant herein, Defendant City of Saratoga Springs, New York (hereinafter "City"), is a municipal corporation organized and existing pursuant to the laws of the State of New York and set up as a commission form of government.

6.      The Saratoga Springs Police Department ("SSPD") is a department within the City and is subordinate to the Commissioner of Public Safety.

## JURISDICTION AND VENUE

7.      This action is brought under 42 U.S.C. § 1983 and New York State common law.

8.      This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in this court pursuant to 28 U.S.C. § 1391 because all parties reside within the Northern District of New York and a substantial parts of the events giving rise to the claim occurred within the Northern District of New York.

10.     A Notice of Claim pursuant to the New York State General Municipal Law was served on the City of Saratoga Springs Corporate Counsel on August 15, 2025.

11.    A hearing pursuant to Gen. Mun. L. 50-h was held on July 1, 2026.

12.    More than thirty (30) days have elapsed since the presentation of the claim and the claim remains unpaid and unadjusted.

## FACTUAL ALLEGATIONS

### I.    Background

13.    Plaintiff is a public servant and an attorney in good standing who is licensed to practice law in the State of New York.

14.    Plaintiff has never been subject to any attorney disciplinary proceeding.

15.    Plaintiff is a registered Democrat and is African American.

16.    Following the murder of George Floyd in 2020, the City of Saratoga Springs formed a Police Reform Task Force ("Task Force"), made up of twelve residents, the City Attorney, and the City's Police Chief.

17.    Plaintiff was one of the twelve residents appointed to the Task Force and was named Co-Chair of the Task Force upon its inception.

18.    In April of 2021, the City Council adopted a 50-point plan recommended by the Task Force that called for various reforms to police procedures.

19.    In May of 2022, Plaintiff was unanimously selected by the City Council to fill the vacant post of Commissioner of Public Works.

20.    In November of 2022, Plaintiff was elected to the position of Commissioner of Public Works after defeating Republican candidate Anthony Scirocco Jr.

21.    Plaintiff served as the Commissioner of Public Works until August 2024, when he resigned upon accepting his current position as Deputy Commissioner and General Counsel for the New York State Department of Corrections and Community Supervision.

**II.       Defendant Tim Coll's Smear Campaign**

22.    Defendant Tim Coll is a white man and ran on the Republican Party ticket.

23.    In August of 2022, Plaintiff publicly criticized a proposed panhandling ordinance that was up for a vote before the City Council.

24.    Plaintiff expressed concerns about the proposed ordinance's subjectivity and potential for unfair treatment under the law based on class and race.

25.    At this time, Defendant Coll did not occupy any elected position within the City.

26.    As of August 2022, Plaintiff had never met or even spoken to Mr. Coll.

27.    After Plaintiff's statements regarding the proposed ordinance, Coll contacted Plaintiff's then-employer, Kahilla (a private company) on or about August 25, 2022. Coll stated in an email to Plaintiff's employer that he is a retired FBI Agent and requested an email address to which he could file an "official complaint" against Plaintiff.

28.    Coll's contact with Plaintiff's employer was in direct response to Plaintiff's outspoken criticism of the proposed panhandling ordinance.

29.    Then, on or about August 30, 2022, Coll filed a complaint with the Appellate Division, Third Department's Attorney Grievance Committee accusing Plaintiff of "bigotry" and describing him as "racist on several fronts" because Plaintiff used a hypothetical scenario to make a point about implicit racial and class-based bias during a public debate about the panhandling ordinance. He further accused Plaintiff of misconduct, noting Plaintiff's position as a public official, based on Plaintiff's advocacy. At no time was Defendant Coll a legal client of Plaintiff, nor did Coll have any interaction with Plaintiff in a legal setting.

30.    The Attorney Grievance Committee declined to investigate Coll's complaint.

31.    Next, on September 2, 2022, Defendant Coll a wrote a letter to the editor of a

Saratoga newspaper reiterating his grievances against Plaintiff.

32.    At or around this same time, Coll also filed a complaint regarding Plaintiff to Congressman Paul Tonko.

33.    In September of 2022, former Mayor of Saratoga Meg Kelly and Former Head of Counterterrorism at the FBI, Art Cummings, intervened on Plaintiff's behalf to try to stop Coll's unhinged and baseless attacks.

34.    Due to Coll's ongoing attacks and obsessive behavior directed against Plaintiff, and for fear for his and his two young children's safety, Plaintiff contacted the Saratoga Springs Police Department ("SSPD").

35.    Plaintiff met with Lieutenant Bob Jilson regarding Coll's attacks.

36.    In direct response to Coll's continued attacks, the SSPD installed a panic button in Plaintiff's City Hall office for his personal protection.

## III.    May 2023 Resolution Regarding Historic Racism

37.    In May 2023, the City Council – of which Plaintiff was still a part – passed a resolution formally apologizing for the City's past of systemic racism, including within local policing.

38.    The resolution, which Plaintiff supported, acknowledged, apologized for, and review the City's historic racism as part of the establishment of a panel to begin a conversation of rectifying the historic wrongs. These were part of recommendations made by the Police Reform Task Force.

39.    Defendant Coll was notably opposed to many of the recommendations of the Police Reform Task Force and was highly critical of documentations of historic racism within SSPD.

## IV.    The Commissioner of Public Safety Position

40. In November of 2023, Coll was elected to the position of Public Safety Commissioner for the City.

41. In the City, the Commissioner of Public Safety is the Head of the Police Department, responsible for the enforcement of laws, ordinances, rules and regulations in the City and the appointment and oversight of the Chief of Police.

42. The Commissioner of Public Safety is responsible for the oversight of the SSPD.

43. The Commissioner of Public Safety is responsible for developing, managing, implementing, and updating plans and policies of the Department under their authority.

44. The Commissioner of Public Safety is a policy maker for the City.

45. The Commissioner of Public Safety has the power to fire and discipline SSPD members.

46. In February of 2024, after an extensive investigation, the New York State Attorney General's Office issued a Formal Report ("Report") concerning the SSPD.

47. The Report echoed Plaintiff's 2022 concerns regarding racial and class-based bias in the policing practices of the SSPD and found that reforms in policy and practice were needed.

48. The Report found that former Commissioner of Public Safety, Robin Dalton, had explicitly ordered members of the SSPD to make arrests of protesters during Black Lives Matter protests – and that the SSPD complied with the directives.

49. The Report found that while the Commissioner of Public Safety did not have the legal power to order police to make arrests, the Commissioner of Public Safety outranks all members of the SSPD in policymaking and has the power to fire or discipline officers.

50. The City Charter explicitly subordinates the Chief of the SSPD to the Commissioner of Public Safety.

51.    In sum, the Report found that there existed an unofficial policy in the SSPD granting de facto arrest policy making authority to the Commissioner of Public Safety because of the inherent political power and administrative authority the Commissioner has over the SSPD and its officers.

## V.    Plaintiff's Sink Clog

52.    In December of 2023, Plaintiff had a clogging sink issue in his home.

53.    Plaintiff asked Deputy Commissioner of Public Works O'Neill if any Department of Public Works ("DPW") employees wanted after-hours work to look at the drain issue.

54.    It was common and acceptable practice for DPW employees to take side jobs and find extra work after hours.

55.    Deputy Commissioner O'Neill and DPW employee Ken Dooley went to Plaintiff's home after work hours and fixed the drain issue in approximately forty-five minutes.

56.    At that time, Ken Dooley was a provisional employee for the Department of Public Works.

57.    The next day, at his request, Ken Dooley returned to Plaintiff's house to pick up tools he had left there the night before and to drop off a bottle of drain cleaner. At no time did the plaintiff request Dooley return to the house nor did he request a bottle of drain cleaner.

58.    Dooley was at Plaintiff's residence for approximately nine minutes that day.

59.    Dooley did no work on Plaintiff's house during the nine-minute visit.

60.    In February of 2024, Dooley was fired by Deputy Commissioner Joe O'Neill from his job by Deputy Commissioner O'Neill for poor performance and harassment of female employees.

61.    Plaintiff had no prior knowledge of, or involvement in, Ken Dooley's firing.

7

62. Following Dooley's dismissal, Defendant Coll, in March of 2024, forwarded an allegation from Dooley to the City's Human Resources Office stating Plaintiff  and, separately Deputy Commissioner, Joe O'Neill, improperly used City personnel to fix a clogged drain in his home.

## VI.   Coll's Investigations Into Plaintiff

63. In March of 2024, after Dooley was terminated, Defendant Coll conducted an interview with Ken Dooley regarding the drain cleaning.

64. Defendant Coll claimed that the interviews were in regard to the Human Resources investigation.

65. Defendant Coll had no authority to conduct a Human Resources investigation and was not part of the City's Human Resources office.

66. In March and April of 2024, the City's Human Resources Department interviewed Plaintiff and Ken Dooley and then took no action against Plaintiff.

67. The Commissioner of Public Safety for the City has no authority over the City's Human Resources Department. The City's Human Resources department is part of the mayor's department, not law enforcement.

65. Despite having no authority over the Human Resource Department's investigation, Coll oversaw the Human Resources investigation and involved himself directly by conducting multiple interviews of City employees, searching for any evidence of wrongdoing against Plaintiff that could be used for political and/or legal retribution.

## VII.   The Instigated and Dismissed Criminal Case Against Plaintiff

66. John Kaufman is a conservative local political blogger.

67. Kaufman publishes the blog Saratoga Springs Politics at the web address

https://saratogaspringspolitics.com.

68.     Kaufman has never been employed by the City in any capacity.

69.     Kaufman is a political supporter and confidant of Coll and Kaufman's wife is Coll's campaign manager.

70.     Though it was ostensibly a confidential matter, Coll informed Kaufman about the Human Resources investigation that Coll had instigated, oversaw, and participated in.

71.     In June of 2024, Kaufman filed a complaint at Coll's behest against Plaintiff with the Office of the State Comptroller, accusing Plaintiff of blackmail and theft of services.

72.     At this time, the internal Human Resources Department investigation into Plaintiff was not public.

73.     Then, in July of 2024, SSPD opened a criminal investigation into Plaintiff.

74.     The SSPD investigation was instigated by Coll.

75.     Although Coll would later claim that the investigation was referred to SSPD by New York State Police, there was no such referral from any outside law enforcement agency for Plaintiff's prosecution.

76.     The New York State Police General Counsel confirmed by email that there was nothing in the State Police record system regarding a referral to SSPD concerning plaintiff.

77.     Rather, SSPD's investigation originated with and was instigated and pursued by Coll.

78.     Upon the opening of the investigation, Coll forwarded a handwritten memo to SSPD Lieutenant Paul Veitch ("Lt. Veitch") claiming that Ken Dooley had performed work at Plaintiff's house "on city time."

79.     On July 29, 2024, Lt. Veitch incident report states that he was "forwarded" a

referral from SSPD Assistant Chief Warfield regarding a potential theft of services claim against Plaintiff.

80.    On July 31, 2024, Lt. Veitch stated he was forwarded a memo from Coll about the alleged theft of services.

81.    On July 31, 2024, Lt. Veitch stated that he will "add" the law enforcement referral and Coll's memo to his police file. This indicates SSPD was already investigating plaintiff prior to any alleged referral.

82.    In August of 2024, and continuing into September and October of 2024, media reports were published concerning an SSPD criminal investigation of Plaintiff – well before Plaintiff was informed of the SSPD investigation against him.

83.    In September of 2024, *Moving Saratoga Forward*, a conservative political blog, posted a story claiming Plaintiff was under investigation for misuse of city funds. The article was removed twenty-four hours later.

84.    Plaintiff was not contacted by the SSPD regarding the investigation at this time.

85.    On September 11, 2024, Lt. Veitch interviewed DPW employee Kevin Older regarding the incident. Kevin Older stated that he had not performed work for Plaintiff on City time.

86.    On September 27, 2024, Lt. Veitch interviewed Ken Dooley regarding the incident.

87.    The City's Mayor John Safford made a statement to *Daily Gazette* newspaper reporter Shenandoah Briere that the City's Human Resources Department and SSPD were investigating Plaintiff for allegedly having had used City employees for work on personal property.

88.    At this time, Kaufman's political blog continued to publish confidential facts only known to the SSPD and Coll, including information that was only in the SSPD case file.

10

89.    On September 30, 2024, Lt. Veitch memorialized conversations he had with Saratoga County Assistant District Attorney Joe Frandino ("ADA Frandino") regarding the investigation into Plaintiff in a written note.

90.    The note, written by Lt. Veitch, states that ADA Frandino believed that based on the facts the only conceivable charge against Plaintiff could be a potential larceny charge. Upon information and belief, at the time SSPD was attempting to charge plaintiff with Official Misconduct.

91.    The would-be larceny charge stemmed from an allegation that Ken Dooley used a $10 bottle of drain cleaner from the City to fix the drain problem in Plaintiff's house.

92.    Plaintiff neither requested the drain cleaner nor had no knowledge of where the drain cleaner came from when it was allegedly used at his residence and there was no evidence produced, or that existed, to that effect.

93.    Upon information and belief, at no time did the District Attorney's Office identify Official Misconduct as a viable charge against Plaintiff.

94.    In October of 2024, Lt. Veitch finally informed Plaintiff about SSPD's criminal investigation, several months after it began appearing in the press, John Kaufmann's blog, and through public disclosures by the mayor.

95.    On October 7, 2024, Lt. Veitch conducted a second interview with Kevin Older, who now stated that he had performed work on City time.

96.    At no time was there any evidence that Kevin Older performed any work at plaintiff's house.

97.    On October 9, 2024, Kaufman published an article in *Saratoga Today*, stating that "[t]here is an abundance of evidence to indicate this is more than just a 'huge rumor,'" including

11

a complaint made to the New York State Comptroller which he himself had filed based on information leaked to him by Coll. He included a photo and a specific reference to "Green Gobbler" drain cleaner in his article, which was information in the police file known only to Lt. Veitch and Coll.

98. On October 14, 2024, Plaintiff voluntarily sat for a recorded interview with Lt. Veitch.

99. During Plaintiff's interview, Lt. Veitch called the case against Golub "a big pile of what the fuck" and stated that "it's Floor 2. It's not really Floor 1 that has any issues" – an admission that the criminal investigation was being instigated and pushed by Coll, whose commissioner office is located on the second floor of the City Hall building.

100. SSPD's headquarters are on the first floor of the City Hall building.

101. Lt. Veitch further stated on the record that plaintiff would only be interviewed if it was recorded as that was SSPD policy.

102. Plaintiff permitted his interview to be recorded.

103. The interviews of Ken Dooley and Kevin Older were not recorded.

104. Lt. Veitch further acknowledged in the interview of plaintiff that stories disparaging plaintiff were being leaked to the media and suggested that the leaks were coming from city officials on the second floor of City Hall.

105. Finally, in Plaintiff's interview Lt. Veitch stated that "I can't speak for HR and here's why. I purposefully have not asked them. I have not been shown anything. I don't want to see anything… because we don't cross investigate."

106. Upon information and belief, there is ample evidence of Lt. Veitch speaking to HR, requesting information from HR, and, when told by ADA Frandino, there is no support for an

12

official misconduct charge, states he will "go back to HR and see if they have anything else we can use."

107. At some point during the beginning of the criminal investigation, Coll reached out to and met with the District Attorney's office to discuss and coordinate potential charges to be brought against Plaintiff.

108. Coll had no position within the District Attorney's office, no authority to discuss or decide which criminal charges, if any, should be brought against Plaintiff, and yet was meeting with law enforcement and the District Attorney's office in order to ensure that if SSPD filed criminal charges against Plaintiff, that he would be prosecuted.

109. Mr. Coll's actions followed and continued a pattern, custom, and policy within the City and SSPD of the Commissioner of Public Safety using their position and political pressure to instigate criminal proceedings against political adversaries.

110. On November 4, 2024, SSPD charged Plaintiff with Official Misconduct, a criminal misdemeanor. No larceny or other charge was brought.

111. The charge was brought by a criminal complaint signed by Lt. Veitch.

112. The charge was based on the nine minutes Ken Dooley had spent at Plaintiff's house to pick up his tools and drop off a bottle of drain cleaner – not the time spent the night prior to fix the drain.

113. Had he been convicted, Plaintiff would have lost his job as a senior government employee and likely his license to practice law, which would have precluded future employment.

114. On November 6, 2024, Coll issued a press release on his official Commissioner of Public Safety letterhead announcing the criminal charges against Plaintiff.

115. Upon information and belief, there has been no other instance in which Coll issued

13

a press release regarding misdemeanor charges brought against any other person than Plaintiff.

116. On November 7, 2024, the *Times Union* published an article in which Ken Dooley admitted that he was encouraged by someone to go to the SSPD and make allegations against Plaintiff. Dooley further stated that the work at plaintiff's house was conducted after hours and he went back the next day for a few minutes to collect his drain snake. In the same article, Coll stated that he was not pushing the charges and that he cannot direct the SSPD to charge anyone – but that he supported the decision to charge Plaintiff.

117. On November 7, 2024, Coll stated in a News Channel 13 article, that the matter originated with the New York State Comptroller's Office, it was referred to State Police and then to Saratoga Springs Police.

118. On November 8, 2024, Coll was interviewed by WAMC and stated he did not direct the police department to bring charges and that the matter originated from the State Comptroller, but that he fully supported the police's decision to pursue charges.

119. In fact, as Coll well knew, the complaint to the State Comptroller originated and was filed by Kaufman at Coll's behest and direction and was not pursued.

120. Also during this interview, Defendant Coll acknowledged that he reported Plaintiff to the Attorney Grievance Committee in 2022. In Defendant Coll's own words, Plaintiff's stated concerns about potential racial and class-based bias in the SSPD "bother[ed] me quite a bit."  An excerpt from WAMC's report is below:

14

It was before Coll was elected to his first term last year when, in 2022, the retired FBI agent criticized Golub for comments he made during a discussion on an aggressive panhandling resolution. At the time, Golub raised concerns that city police might believe false testimony from a "rich white lady." Coll complained about that comment.

"I did make a referral, because he's a lawyer, to his place of employment. I made a referral to the Bar Association as well because no one, no lawyer, no law enforcement official, again, should be making comments on people's status. And that did bother me quite a bit," said Coll.

Source: https://www.wamc.org/news/2024-11-08/former-saratoga-springs-public-works-commissioner-and-deputy-charged-with-misconduct

121. Coll has repeatedly inaccurately described the origin of the case and the manner in which SSPD began investigating in this manner.

122. On March 11, 2025, Coll stated to the Times Union, by email, that he handled the case professionally and denied leaking information to the media.

123. On June 2, 2025, the Honorable Jeffrey Waite dismissed the criminal charges against Plaintiff on a motion to dismiss, finding that the facts neither supported "a finding that the defendant knew the employees were on City time or that they were using City property" and "that the Misdemeanor Complaint [did] not set forth factual allegations which constitute, even if true, the crime of Official Misconduct."

124. Judge Waite's decision conclusively terminated the criminal matter in Plaintiff's favor.

## VIII.   Coll's Continued Public Disparagement of Plaintiff

125. On June 3, 2025, Coll stated to the *Times Union*, after the dismissal of charges against Plaintiff, that "there [was] a technical issue with the charging document" and that the District Attorney was reviewing it.

15

126.    The District Attorney's Office never stated that the charges against Plaintiff were dismissed based on technicality and never appealed Judge Waite's decision.

127.    Plaintiff was never re-charged with Official Misconduct, or any other charge.

128.    When Plaintiff and his attorney petitioned the City to cover his substantial legal fees as it must under the Public Officer's Law (fees that were created and caused by Defendants' unconstitutional actions), Coll objected to paying the fees and insinuated Plaintiff engaged in criminal conduct by stating publicly at a City Council meeting that the charges were dismissed on a "technicality" and that Plaintiff "was not found guilty or acquitted."

129.    Coll, as an experienced law enforcement officer, knew and knows the meaning of Judge Waite's decision to dismiss the charges.

130.    Coll further stated that plaintiff's deputy, Joe O'Neill "accepted responsibility" for his actions, insinuating that plaintiff and Joe O'Neill were similarly situated.

131.    Coll failed to state that Joe O'Neill had a completely different and unrelated fact pattern than plaintiff, for which he acknowledged wrongdoing.

132.    On August 18, 2025, in response to Plaintiff's filing of a Notice of Claim against the City in this matter, Coll publicly released a confidential and internal City Human Resources Investigative Report concerning Plaintiff in order to "substantiate[] that a member of the Department of Public Works performed work at Plaintiff's personal residence at the City's expense." Defendant Coll repeatedly stated that he did so to "set the record straight."

133.    The subject of the Human Resources Investigative Report was alleged ethical violations, not criminal conduct.

134.    On August 19, 2025, Coll stated to the *Times Union* that "[he] didn't direct the police to investigate Golub – but I did ask the city's Human Resources Department to do so."

16

135.    On August 20, 2025, Coll stated during a WAMC interview that he believed that Plaintiff engaged in criminal conduct and was guilty of committing "official misconduct."

136.    In January of 2026, in a *Times Union* article, Kaufman referred to Golub as a thief.

137.    More recently, in March 2026, Defendant Coll stated in a recorded interview on WAMC that he was "was very troubled a few years ago [by] what Jason said about referring to a 'rich white lady' referring to someone's status as being rich or white or black or poor or yellow or whatever their status is, or sexual orientation, versus their activity. And I made that known at the time."

138.    These comments – made years after the fact – demonstrate Defendant Coll's longstanding animus towards Plaintiff as a result of Plaintiff's efforts to speak out against documented racism in the SSPD.[1]

139.    Coll's continued defamatory statements that Plaintiff was a criminal and that the charges against him should not have been dismissed, despite his knowledge of their insufficiency, were motivated by racial, political and personal animus and constitutes actual malice.

## **FIRST CAUSE OF ACTION**
Malicious Prosecution under 42 U.S.C. § 1983
(Against Defendants Coll and Veitch)

140.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 123 above.

141.    At all times relevant, Defendants Coll and Lt. Veitch, were state actors acting under color of law.

142.    That on November 4, 2024, Defendant Lt. Veitch, at Coll's instigation and direction, did intentionally, maliciously, and without justification, commence criminal

---

[1] https://www.wamc.org/news/2026-03-04/saratoga-springs-city-council-votes-to-file-notice-of-appeal-in-indemnification-decision

proceedings against Plaintiff by charging him with a misdemeanor, which they knew was without probable cause, which was dismissed in Plaintiff's favor, and restrained Plaintiff's liberty.

143.    Defendants charged Plaintiff with crimes falsely, maliciously, in bad faith, and without probable cause.

144.    Defendants knew they lacked probable cause to prosecute Plaintiff because they knew he had done nothing wrong, and that no reliable information suggested Plaintiff had committed any offense.

145.    No reasonable officer or public official would have believed there was probable cause to prosecute Plaintiff under these circumstances.

146.    After criminal proceedings in which Plaintiff was forced to defend himself, all charges against Plaintiff were terminated in Plaintiff's favor on a motion to dismiss.

147.    Defendants acted under pretense and color of state law. Said acts by Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

148.    Said acts by Defendant Coll are part of an ongoing and continuous pattern of unwarranted and malicious attacks, beginning in 2022.

149.    As a direct and proximate result of the Defendants' misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

**SECOND CAUSE OF ACTION**
State Law Malicious Prosecution
(Against Defendants Coll, Veitch, and SSPD)

150.    Plaintiff repeats and realleges the above paragraphs as if they were set forth

fully herein.

151. Defendants Coll and Veitch, acting in their capacities as Commissioner of Public Safety and SSPD Lieutenant, respectively, and within the scope of their employment as such, maliciously commenced criminal proceedings against Plaintiff.

152. As set forth above, Defendants charged Plaintiff falsely, in bad faith, and without probable cause.

153. After months of legal proceedings in which Plaintiff was forced to make numerous appearances and to defend himself, all charges against Plaintiffs were terminated in Plaintiffs' favor.

154. Defendant City, as employer of Coll and Veitch, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

155. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

### THIRD CAUSE OF ACTION
*Monell* Liability
(Against Defendants City and SSPD)

156. Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

157. In filing false charges against Plaintiff, Lt. Veitch was following SSPD's custom and policy of filing criminal charges against individuals at the direction of the Commissioner of Public Safety.

158. Coll, as Commissioner of Public Safety, was a final policymaker for the City.

159. As a policy making official for the City, Coll continued, implemented and effectuated a practice and custom of instigating criminal charges to be filed by SSPD against

individuals, including political opponents like Plaintiff, at his direction as Commissioner of Public Safety.

160.     Coll, as the Commissioner of Public Safety, ordered the investigation and commencement of the prosecution of Plaintiff pursuant to a unwritten policy or custom within the City and SSPD. This practice, policy, and custom of policy-makers weaponizing SSPD against political opponents was well-documented in the Attorney General's report.

161.     Defendant Coll, as part of his weaponization of the SSPD, perpetuated a custom of leaking information from pending criminal investigations for publication by political allies, such as Kaufmann.

162.     The City and SSPD were on notice that there existed a failure to supervise and failure to train law enforcement officers within SSPD. Specifically, the City and SSPD maintained a policy, custom and/or practice of failing to train its officers regarding the duty to avoid political influence and pursue criminal prosecutions at the behest of the Commissioner of Public Safety.

163.     That, as a result of the charges against him, Plaintiff's liberty interests were restrained as he was required to render himself at all times amenable to the orders and process of the court following his arraignment, and he suffered damages that were proximately caused by the City's and SSPD's customs, policies, failure to train, and failure to supervise, as stated above and implemented by Coll as a policy maker for the City.

**FOURTH CAUSE OF ACTION**
Abuse of Process under 42 U.S.C. § 1983
(Against Defendants Coll and Veitch)

164.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 145 above.

165.     At all times relevant, Defendants Coll and Lt. Veitch were acting in their capacity

20

as public officials and state actors acting under color of law.

166.    That the defendant's commenced a criminal action against Plaintiff with the intent to do harm to his reputation and remove him from his public employment – depriving him of his livelihood.

167.    Specifically, the defendants instigated criminal proceedings without factual basis for the purpose of ruining Plaintiff's reputation and removing him as an outspoken political opponent.

168.    That Coll and Lt. Veitch, both with significant law enforcement and prosecutorial experience, knew that the facts with which Plaintiff was charged did not constitute criminal conduct, and yet instigated and brought the charges anyway.

169.    That Plaintiff suffered harm and damages as a consequence of Defendant's actions.

### FIFTH CAUSE OF ACTION
First Amendment Retaliation under 42 U.S.C. § 1983
(Against Defendant Coll)

170.    Plaintiff realleges and incorporates by reference paragraphs 1 through 151.

171.    At all times relevant, Defendant Coll was a state actor acting under color of state law.

172.    Plaintiff engaged in speech protected by the First Amendment to the United States Constitution when he publicly criticized the proposed panhandling ordinance in August 2022, expressing concerns about its potential for unfair treatment based on race and class, which infuriated Defendant Coll.

173.    Plaintiff engaged in protected speech when he served as Co-Chair of the Police Reform Task Force and advocated for police reforms, including reforms addressing racial and class-based bias in policing practices.

174. Plaintiff's criticism of the panhandling ordinance and advocacy for police reform addressed matters of public concern, specifically governmental policies, racial equity in law enforcement, and civil rights.

175. As set forth above, Defendant Coll embarked on a campaign, to ruin Plaintiff's career and reputation. Coll did so first as a private citizen, and then soon after he became Commissioner of Public Safety and was in a position to use the force of Government against Plaintiff, he utilized that power to weaponize the SSPD and instigate criminal charges against Plaintiff.

176. These adverse actions, including the instigation of unfounded criminal charges as set forth above, would deter a person of ordinary firmness from exercising their First Amendment rights.

177. A causal connection exists between Plaintiff's protected speech and Defendant's adverse actions.

178. Defendant Coll's campaign against Plaintiff began immediately after Plaintiff's August 2022 criticism of the panhandling ordinance and continued through the instigation of an unfounded criminal investigation and criminal charges in 2024.

179. Plaintiff's protected speech was a substantial or motivating factor in Defendant Coll's decision to investigate, instigate charges, and publicly disparage Plaintiff.

180. Defendants' actions violated Plaintiff's clearly established right to freedom of speech under the First Amendment.

181. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff sustained damages including legal fees, reputational harm, emotional distress, lost career opportunities, and other injuries.

**FIFTH CAUSE OF ACTION**
Equal Protection Violation under 42 U.S.C. § 1983
(Against Defendants Coll, Veitch, City, and SSPD)

182.    Plaintiff realleges and incorporates by reference paragraphs 1 through 163.

183.    At all times relevant, Defendants Coll and Veitch were state actors acting under color of state law.

184.    Plaintiff, an African-American man, was intentionally treated differently from similarly situated individuals.

185.    Defendant Coll issued a press release on official letterhead announcing the criminal charges against Plaintiff, a misdemeanor.

186.    Upon information and belief, Defendant Coll has never issued a press release regarding misdemeanor charges brought against any other person.

187.    No other individual has received similar treatment for comparable conduct involving City employees performing after-hours work.

188.    The differential treatment was based on impermissible considerations, including Plaintiff's race and his exercise of constitutional rights to criticize racially biased policing practices.

189.    Plaintiff is African-American; Defendant Coll is a white former FBI agent.

190.    Defendant Coll specifically targeted Plaintiff after Plaintiff raised public concerns about racial profiling and implicit bias in the City's proposed panhandling ordinance.

191.    The New York State Attorney General's Report subsequently found evidence of racial and class bias in SSPD policing practices, vindication Plaintiff's concerns.

192.    Defendants singled out Plaintiff for investigation and prosecution based on his race and his political viewpoint as a critic of police racial bias.

193.    Even after the baseless criminal case against Plaintiff was dismissed in its entirety, Defendant Coll continued to make misleading public statements regarding Plaintiff and opposed the City's paying of Plaintiff's legal fees. Upon information and belief, no other similarly situated individuals have been denied payment of legal fees upon the favorable resolution of a case.

194.    In fact, not only was Plaintiff's request for payment of attorneys fees rejected, the City Counsel passed a resolution which included a lengthy factual recitation and explaining the City's denial of the request for payment of fees because the conduct alleged in the criminal action was *outside* the scope of his official duties. Upon information and belief, no similarly situated individuals in Saratoga Springs have had a resolution passed denying a request for legal fees.

195.    Notably, the City Council meeting minutes reflect that Defendant Coll – who had for years accused Plaintiff of "official misconduct" – voted in favor of the resolution denying the fees based on the rationale that they were outside the scope of Plaintiff's official duties.

J. Golub Draft Resolution (6-1-2026).pdf

Moved by John F Safford; seconded by Joanne Kiernan to Approve the attached resolution (#2026-026) regarding the indemnification request from Jason Golub.

Motion Passed: 3- 1

Voting For: John F Safford, Joanne Kiernan, Tim Coll

Voting Against: Bhram 'BK" Keramati

Source: A916393xd_x2c2l_clo.tmp, p. 8 of 18.

196.    The differential treatment lacked any rational basis and was motivated by discriminatory animus.

197.    Defendants' conduct violated Plaintiff's right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

198.    The City and SSPD are liable under Monell for the equal protection violations

committed pursuant to their customs, policies, and practices as alleged in paragraphs 139 through 145.

199. As a direct and proximate result of Defendants' conduct, Plaintiff sustained damages including deprivation of liberty, reputational harm, emotional distress, and lost opportunities.

### SIXTH CAUSE OF ACTION
Defamation *Per se*
(Against Coll)

200. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 178 above.

201. That Defendant Coll made false remarks to the press regarding Plaintiff's guilt of the dismissed criminal charges detrimentally affecting Plaintiff's reputation, career, and mental health.

202. Specifically, Coll stated on August 5, 2025 at a public City Council meeting, Coll stated that Plaintiff was not found to be not guilty nor was he acquitted of charges. He once again reiterated that there was a problem with the charging document. He further released a confidential HR report after the case against plaintiff was dismissed in order to "set the record straight", once again implying if not staying directly, that Plaintiff was guilty of criminal conduct.

203. These known false statements were made in front of a public audience and in social media and the press.

204. That as a consequence of Defendants' false and malicious statements, Plaintiff has suffered irreparable harm to his professional reputation, standing in the community, and damage to his career and livelihood.

205. The Defendant's false statements and accusations of deceptive, unethical, and

25

criminal conduct through the accusations of official misconduct exposed Plaintiff to public contempt and ridicule and therefore constitute defamation *per se*.

206. As a consequence of Defendant's acts, Plaintiff has suffered significant damages and reputational harm.

## SEVENTH CAUSE OF ACTION
Conspiracy to Violate Civil Rights Pursuant to 42 U.S.C. § 1983
(Against Coll and Veitch)

207. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 185 above.

208. Defendants Coll and Veitch conspired to deprive Plaintiff of his constitutional rights.

209. Defendants Coll and Veitch agreed and acted in concert to inflict unconstitutional injuries upon Plaintiff.

210. The agreement included a plan to initiate and pursue a baseless criminal prosecution against Plaintiff in retaliation for his protected speech and advocacy for police reform and due to his race.

211. The conspiracy was intended to, and did, deprive Plaintiff of his constitutional rights under the First, Fourth, and Fourteenth Amendments.

212. In furtherance of the conspiracy, Defendants Coll and Veitch committed the following overt acts:

- Coll instigated and directed SSPD to initiate a criminal investigation against Plaintiff;

- Coll conducted unauthorized interviews as part of the investigation;

- Coll and Veitch met with members of the District Attorney's office to discuss and

coordinate charges against Plaintiff;

- Coll leaked confidential investigative information to a political ally, John Kaufman, who then publicized the information to the public;

- Veitch filed criminal charges against Plaintiff on November 4, 2024 after being told by the Assistant District Attorney that there was not evidence to support the charge;

- Coll issued a press release on official letterhead announcing the charges;

- Defendants made public statements asserting Plaintiff's guilt despite knowing the lack of merit of the charges;

- Coll continued to make misleading and disparaging statements about Plaintiff and the charges even after the charges were dismissed.

213. These overt acts caused damages to Plaintiff, including deprivation of liberty, reputational harm, emotional distress, financial loss, and interference with career opportunities.

214. Defendants Coll and Veitch acted willfully and with specific intent to deprive Plaintiff of his constitutional rights.

215. As a direct and proximate result of the foregoing, Plaintiff sustained the damages alleged herein.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and grant the following relief:

a. Compensatory and consequential damages in an amount to be determined at trial, including lost wages, reputational harm, emotional distress, and other economic and non-economic injuries;

b. Awarding punitive damages;

c. Awarding attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

d. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as to all claims triable in this action.

**CAPEZZA HILL, LLP**

Dated: August 3, 2026

_____
Benjamin W. Hill
Allee N. von Stackelberg
*Attorneys for Plaintiff Jason Golub*
30 South Pearl Street, P-100
Albany, New York 12207
(518) 478-6065
Ben@capezzahill.com

28